Chief Justice Robertson
delivered the Opinion of the Court.
The only question presented by the assignment of errors in this case, is, whether a free man of color may, by his own oath, require a white man to give security to keep the peace.
The second section of an act of 1798, 2 Dig. 1150. declares that 15 no negro or mulatto shall be a wii- *467 ftess,” — except in cases in which “negroes or mulat-foes alone shall he parties ancl the-second section of another act of the saíne session, 2 Dig. 1251, declares that, “ no negro, mulatto, or Indian shall he admitted to give evidence hut against or between negroes, mulattoes, or Indians.” But these enactments were intended to apply only to testimony in suits pending between parties. ! hey do not disqualify freemen of color to take an oath and swear to facts in every case in which a white man may be concerned.
The oath or affii." davit of a freq man of color, •party, may be received in any case where the oath or affidavit of a party is required or admissible.
A free man of color may sue or be sued ; when plaintiff, he may swear for a continuance, or make affidavit for requiring bail; when defendant,'he may swear to a plea of non est factum.
These and similar rights are incident to his freedom ; and without them he would be virtually disfranchised. Any free man has an unquestionable right to bind any other free person to keep the peace, whenever he shall have sufficient cause for apprehending bodily harm from the malice of such person.
How shall a free man of color require a white man to keep the peace ? Just as a white man may bind him to keep the peace — by swearing to such facts as may be necessary to shew that he-has just cause for apprehending peril to his life or person. And when thus deposing he is not a witness in a “case” between parties; nor is he giving “ evidence” against a white man, within the object or meaning of either of the foregoing sections of the acts of 1198: He is not a “witness,” but a party swearing to what any other party may, for the like pur-’ pose, make an affidavit.
This interpretation of the statutory inhibitions is fortified by authority. See Williams vs. Blincoe, 5 Littell's Reports, 171.
Wherefore, it is the opinion of this court, that the circuit court erred in refusing to permit Johnson, a freeman of color, to be examined on oath, upon his application to hold to further security Oldham, a white man, who had been bound to keep the peace, and had appeared in discharge of his recognisance.
When a party appears according to his re-cognisance and is discharged, it is thenceforth inoperative. No appeal or w. e. lies on the order discharging him. — The remedy, where one hound to lteep the peace is improperly discharged,is by a new proceeding before a justice.
But this opinion cannot rei> state the parties. After Oldham had been discharged by the circuit court-, he was personally out of court, and a reversal of the order for his discharge would not bring him back personally into court, as he stood when that order was erroneously made. Johnson’s -remedy, after the discharge, was to apply, as in the first instance, to a justice of the peace and obtain security by requiring another recognisance. After the discharge by the order of the court, Oldham was not liable to' be proceeded against for a breach of.his, recognisance, nor was he liable to any proceeding in per-sonam upon that recognisance.
Wherefore, as no practical^good in this case, can result from a-reversal of the order of the circuit court, and as it is a casé in which an appeal is inappropriate, the appeal must be dismissed.-